JON SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona 85007
Telephone: 602-382-2700

JANE L. McCLELLAN
State Bar No. 015902
Asst. Federal Public Defender
Attorney for Defendant
jane_mcclellan@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Valance Ray Smith, Sr.,<br><br>Defendant | CR-13-8043-PCT-GMS<br><br>**MOTION TO SUPPRESS DEFENDANT'S STATEMENT**<br><br>**(Evidentiary Hearing/Oral Argument Requested)** |

Defendant Valance Ray Smith, Sr., by and through undersigned counsel, hereby moves for suppression of Defendant's statement. Defendant argues that his statement is not admissible because: (1) he did not make a knowing intelligent and voluntary waiver of his *Miranda* rights, (2) his statement was not voluntary based on due process concerns, and (3) the statement was obtained as a result of a Fourth Amendment violation when he was confronted with illegally obtained evidence. This motion is made pursuant to United States Constitution Amendments IV and V, and Title 18 U.S.C. § 3501; *see also Dickerson v. United States*, 530 U.S. 428 (2000) (affirming *Miranda*); *Fahy v. Connecticut,* 375 U.S. 85, 90 (1963) (statement inadmissible if defendant shows it was induced by

confrontation with illegally seized evidence). This motion is more fully supported by the attached memorandum of points and authorities.

It is expected that excludable delay under 18 U.S.C. § 3161(h)(1)(F) will occur as a result of this motion or from an order based thereon.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Factual Background

Valance Ray Smith, Sr., is charged in Counts One and Three with Assault with a Dangerous Weapon, in violation of 18 U.S.C. §§ 1153 and 113(a)(3). He is charged in Count Two with Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). Counts One and Two relate to the same conduct that occurred on September 29, 2012. Count Three relates to allegations of a different assault on the same victim about one year earlier, on July 8, 2011. The Government alleges that on September 29, 2012, Mr. Smith assaulted Maydena Sampson by hitting her with a metal pipe. The Government alleges that on July 8, 2011, Mr. Smith assaulted the same victim, Ms. Sampson, by stabbing her foot with a knife. This motion only pertains to Counts One and Two (the 2012 assault).

Some time in the mid-morning hours of September 29, 2012, Ms. Samspon arrived at the back door of Erva Bravo and stated that she had been assaulted by her boyfriend, Valance Smith. Ms. Bravo lives in close walking distance of Mr. Smith's residence where the assault is alleged to have occurred. Ms. Sampson was taken by her mother to the Peach Springs Emergency Medical Services Office and then transported to Kingman Regional Medical Center for bodily injuries. The police made three visits to Mr. Smith's residence that day.

2

First, Officer Jaros went to Mr. Smith's residence and talked to him.[1] According to Officer Jaros, he entered Mr. Smith's residence with his consent. Mr. Smith stated that Ms. Sampson had been at his house and that she ripped off his colostomy bag, that she was angry with him, and that she accused him of cheating on her. Officer Jaros took photographs inside the residence. Mr. Smith told Officer Jaros that he had been drinking, and the officer noted that Mr. Smith's speech was slurred.

Officer Jaros went to Mr. Smith's home a second time shortly after 2:23 p.m. Again, Mr. Smith allowed Officer Jaros to enter the residence. Officer Jaros asked if he could search the residence, and he had Mr. Smith sign a Consent to Search Waiver form. Officer Jaros took blook samples from inside the house and seized a metal pipe. He also took additional photographs inside the home. Defendant has filed a Motion to Suppress Evidence for Fourth Amendment Violations arguing that the evidence seized during the first two visits to Mr. Smith's residence, namely the blood samples, metal pipe, and photographs, should be suppressed.

On the third visit to Mr. Smith's residence, at approximately 7:30 p.m. on September 29, he was arrested by Officer Nixon and he was read his *Miranda* rights. When he was booked on the charges, a blood alcohol test was performed, and his BAC was 0.224.

---

[1] In Defendant's previously filed Motion to Suppress, he stated that Officer Hammontree was the first officer to go to Mr. Smith's residence. Defense counsel was informed by the Government that the report is incorrect, and that it was in fact Officer Jaros who went to Mr. Smith's home the first and second time that day.

3

On September 28, 2012, the day before the assault, Mr. Smith had a seizure in the mid-morning, which was probably caused by alcohol withdrawals. He has had seizures before for this same reason. He was taken to Peach Springs Emergency Medical Services and then transferred to Kingman Regional Medical Center. The medical reports note that Mr. Smith had two current medications that he was taking – tramadol and hydrocodone. He was not under the influence of alcohol at the time of his intake at the hospital. He was accompanied by Maydena Sampson at the hospital, and he was discharged at approximately 1:44 p.m. He was prescribed Keppra, which is an anti-seizure medication, and he was advised that he should not drink alcohol. *See* Excerpts of Medical Records for Valance R. Smith from Kingman Regional Medical Center (Exhibit A). Mr. Smith left the hospital with Ms. Sampson and they immediately obtained alcohol and started drinking. They continued drinking the next day, September 29, 2012.

The day after the assault, on September 30, 2012, Mr. Smith was interviewed while in custody at the Hualapai Tribal Adult Detention Center in Peach Springs, Arizona, by Hualapai Tribal Criminal Investigator Roger E. Felker and by F.B.I. Special Agent Alberto P. Chavez. *See* Advice of Rights form (Exhibit B). A copy of the Transcript of Interview, dated September 30, 2012, is attached for the Court's review (Exhibit C) (hereinafter "TI"). Mr. Smith states at the beginning of the interview that, "I still need my medication." TI at p.2, line 24 to p.2, line 3 (stating he had not received his pain medication and probably referring to his seizure medication also). Mr. Smith had been seriously injured a few months earlier in an accident involving a horse, and because of this, he temporarily had a colostomy bag. He was prescribed pain medication for a previous injury.

4

Mr. Smith was advised of his *Miranda* rights, and he signed a *Miranda* waiver form. TI at p. 5, line 8 to p.6, line 10. The form was signed at 12:38 p.m. on September 30, 2012. During the interview, Mr. Smith stated that, in addition to alcohol, he also ingested the prescription drugs Keppra, Tramadol, and Oxydocone on September 29, 2012.[2] TI at p.22, lines 5-24. During the interview, the tribal investigator and the special agent (hereinafter "the agents") confronted Mr. Smith with the physical evidence that was seized from his residence the day before. Specifically, the agents repeatedly referred to the "broom" (the metal pipe that is alleged to be the weapon is part of a broom) and the "broom handle," and that there was blood on the broom handle. Also, Mr. Smith and the agents refer to the photographs taken at the house, that blood samples were taken from the house, and generally that there was blood in the house. *See* TI a pp.16-17, 20, 33-35, 40, 42-43, 45-46, 54, 73, and 76. Throughout the interview, the agents and Mr. Smith talk about "the broom" and whether it could have inflicted the injuries that Ms. Sampson suffered. Mr. Smith states that Ms. Sampson picked up the broom and hit him with it first, and then he grabbed it from her and hit her three times with it. He also says that she may have fallen after he hit her and injured herself in that manner.

**II.  Defendant's Statement Is Not Admissible Because He Did Not Make a Knowing, Intelligent, or Voluntary Waiver of His *Miranda* Rights**

**A.  The Law**

An accused has a right against self-incrimination. *See* U.S. Const. amend. V.; *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The right to counsel and the

---

[2] Defendant states he took Oxycodone but it may have been Hydrocodone. They are similar drugs prescribed for pain relief.

5

right against involuntary confessions are included within that right. *See Miranda*, 384 U.S. at 444, 464-65. When an accused is in custody and subject to interrogation, then the police must first advise that person of his *Miranda* rights, and the person being questioned must make a valid waiver of those rights before he can be questioned. If he does not voluntarily, knowingly, and intelligently waive these rights, then any confession obtained in violation of that right may not be admitted into evidence. *Id.* at 479. Finally, even if agents obtain a valid waiver, a confession is not admissible if it is obtained involuntarily. *See Spano v. New York*, 360 U.S. 315, 320-21 (1959).

In *Miranda v. Arizona*, the United States Supreme Court held that the prosecution may only use statements obtained during a custodial interrogation when he demonstrates the use of procedural safeguards effective to secure the accused's privilege against self-incrimination. 384 U.S. at 444. Once the government establishes that the warnings were given, it must establish that a "waiver [was] made voluntarily, knowingly and intelligently." *Id.* The government has a heavy burden to show that the defendant's waiver of *Miranda* rights was proper. *See, e.g., United States v. Rodriguez*, 518 F.3d 1072, 1079 (9th Cir. 2008) (*citing Miranda*, 384 U.S. at 475).

A determination of whether a waiver is voluntary, knowing, and intelligent requires a reviewing court to discern whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986) ; *see also United States v. Amano*, 229 F.3d 801, 805 (9th Cir. 2000); *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). A valid waiver also depends on the totality of

6

circumstances, and "a signed waiver form is only one factor to be considered." *See United States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985) (emphasis added), disapproved on other grounds by *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997); *see also United States v. Nick*, 604 F.2d 1199, 1201 (9th Cir. 1979).

### B. Mr. Smith Was Not Capable of Making a Valid Waiver

Defendant asserts that he was not capable of making a knowing, intelligent, or voluntary waiver of his *Miranda* rights because he was still under the influence of the prescription drugs and alcohol that he had taken the day before. Mr. Smith had ingested a large amount of alcohol – in fact his BAC at approximately 7:30 p.m. the night before was 0.224. In addition, he had ingested prescription drugs -- Keppra, Tramadol, and Oxycodone or Hydrocodone. A possible side effect of Hydrocodone is drowsiness, mental clouding, lethargy and impairment of mental and physical performance. *See* PHYSICIAN'S DESK REFERENCE, 67th Ed. (2013) at 589-90. Alcohol use can exacerbate the depressive qualities of narcotics, such as Hydrocodone, and therefore it is not recommended that alcohol be consumed when taking pain medication such as Hydrocodone or Oxycodone. *See Id*. Defendant submits that he was not able to make a valid waiver of his rights only 17 hours after his arrest. Moreover, he had recently suffered a seizure that would have affected his mental alertness and ability to make a valid waiver. Thus, for these reasons, Defendant's waiver of *Miranda* rights was not voluntarily made.

## III. Defendant's Statement Is Not Admissible Because It Was Not Voluntary

### A. The Law

Even when the procedural safeguards of *Miranda* have been satisfied, a defendant in a criminal case is deprived of due process of law if his conviction is

7

founded upon an involuntary confession. *See Arizona v. Fulminante*, 499 U.S. 279 (1991); *Jackson v. Denno*, 378 U.S. 368, 387 (1964). "The Constitution demands that confessions be made voluntarily." *United States v. Haswood,* 350 F.3d 1024, 1027 (9th Cir. 2003); *see also Lego v. Twomey*, 404 U.S. 477, 483-85 (1972). A voluntary statement must be the product of a rational intellect and freewill. *See Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). "[A] confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sorts of threats of violence, nor obtained by any direct or implied promises, however slight, nor by the extension of any improper influence." *Bram v. United States*, 168 U.S. 532, 542-43 (1897) (emphasis added) (*quoting* 3 William O. Russell, et al., A Treatise on Crimes and Misdemeanors 478 (6th ed. 1896)).

The government has the burden of proving that a confession is voluntarily given, and it must do so by a preponderance of evidence. *See, e.g., Fulminante*, 499 U.S. at 288; *Tingle*, 658 F.2d at 1335. The trial judge must determine whether a confession is voluntary before admitting the confession. 18 U.S.C. §3501(a). An involuntary statement is not admissible because it is inherently untrustworthy, and its use violates a fundamental sense of decency. *See Spano*, 360 U.S. at 320-21.

Title 18 U.S.C. § 3501(b) sets forth criteria for determining whether a statement is voluntary: (1) the time elapsing between arrest and arraignment, if the statement was made after arrest and before arraignment; (2) whether defendant knew the nature of the offenses with which he was charged or was suspected of committing at the time he made the statement; (3) whether he had been advised of his *Miranda* rights; and (4) whether defendant was without the

8

assistance of counsel when he was questioned and made the statement. No one of these factors are dispositive of whether a confession is voluntary, but rather they must be viewed under the totality of the circumstances. *See* 18 U.S.C. § 3501(b); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973) (listing circumstances that may affect a determination of voluntariness).

The determination of voluntariness includes consideration of the defendant's personal history, level of education attainment, physical condition, and the circumstances in which police officers elicited the statement. *See Crane v. Kentucky*, 476 U.S. 683, 691 (1986).

**B.     Defendant's Statement Is Not Voluntary Based on His Mental State**

As explained in Defendant's argument regarding the voluntariness of his *Miranda* waiver, Mr. Smith's statements were not made voluntarily because of his heavy ingestion of prescription drugs and alcohol the day before. Looking at the § 3501 factors, most are in favor of admissibility of the statement. Of course, no one of these factors are dispositive, but rather these must be viewed in their totality. *See* 18 U.S.C. § 3501(b). There was not a long lapse between the time of arrest and when the statement was made. However, he was held on tribal charges for several months (released for some period of time), and then not charged in federal court until March 6, 2013. At the time he was questioned, he did seem to be aware of the offense that he was suspected of committing. He was advised of his *Miranda* rights, but as stated earlier, was not capable of making a voluntary waiver of those rights. Lastly, he did not have the assistance of counsel at the time he was questioned.

The Court must also consider Mr. Smith's physical condition and the circumstances in which the police officers elicited the statements. *See Crane,* 476 U.S. at 691. Mr. Smith was in custody and under the influence of mind altering substances at the time he was questioned. Therefore, Mr. Smith did not make a voluntary statement.

### IV. Defendant's Statement Is Inadmissible Because It Was Elicited Through Illegal Search and Seizure

**A. The Law**

Evidence that is obtained as a result of government wrong-doing must be excluded under the *Wong Sun* doctrine. *See United States v. Wong Sun,* 371 U.S. 471, 487 (1963). The district court must consider the extent to which the evidence was obtained by exploitation of the illegality "or instead by means sufficiently distinguished to be purged of the primary taint." *Id.* at 488. Pursuant to the *Wong Sun* doctrine, a confession may be excluded that resulted from the exploitation of police officers' illegal activities. *See Oregon v. Elstad,* 470 U.S. 298, 306 (1985). Defendant must show that the seizure of the evidence "induced" his confession. *See Fahy v. Connecticut,* 375 U.S. 85, 90 (1963).

**B. Mr. Smith's Statement Was Induced by Confrontation with Evidence from the Illegal Search**

As argued in Defendant's Motion to Suppress Evidence for Fourth Amendment Violations, evidence was illegally seized from Defendant's home on September 29, 2012, because Defendant did not voluntarily consent to the search. If the Court sustains this motion, and finds that the evidence was seized in violation of Defendant's Fourth Amendment rights, then the confession should also be suppressed because it is tainted by the illegal search.

10

Here, the agents repeatedly confronted Mr. Smith with the evidence that was seized from his home while he was questioned. Mr. Smith was aware that they had seized the "broom" or "pipe," and he knew that the officers had taken photographs of the blood in his home, because he was there when the photos were taken. *See* TI at p.16, lines 23-24, p.17, lines 1-14 (Defendant states that the police took the broom and took photographs of the blood); *see also* TI at p.33, lines 13-23, p.34, lines 1-14 (agent asks how the officer got the broom). The agents told Mr. Smith that they would do DNA testing on the blood found on the broom and at the house. *See* TI at p.34, lines 15-23, p.35, lines 1-3 (investigator asks if it will "surprise" him if they find the victim's blood on the broom). The agents tell Mr. Smith that the physical evidence will "come[s] into play" and they will determine whether his statement is consistent with the blood evidence and the photographs and the broom handle. TI at p. 40, lines 12-24. This is a clear example of the agents confronting Mr. Smith with the physical evidence illegally seized from the home in an effort to obtain a confession. And again, they ask him if it will "surprise" him if they find the victim's blood on the broom handle. *See* TI at p. 54, lines14-22. After confronting him again with this evidence, Mr. Smith states: "I guess I hit her . . . ." TI at p.54, line 22-23. Ultimately, he admits that he "whacked her [a] couple times, pushed her off and that's it." TI at p.80, lines 1-2.

Therefore, the statement is tainted because it was "induced" by the confrontation and discussion about the seized evidence – the broom, the blood, and the photographs. *See Fahy,* 375 U.S. at 90. The statement must be suppressed.

11

## V.  Conclusion

For all of the foregoing reasons, Defendant's statement is not admissible because he did not voluntarily waive his *Miranda* rights, he did not make a voluntary statement based on a totality of the circumstances and due process concerns, and because the statement was the fruit of an illegal search.

Respectfully submitted:  September 13, 2013.

>    JON M. SANDS
>    Federal Public Defender
>
>     *s/Jane L. McClellan*
>    JANE L. McCLELLAN
>    Asst. Federal Public Defender

12

1  Copy of the foregoing transmitted
2  by ECF for filing September 13, 2013, to:
3  CLERK'S OFFICE
   United States District Court
   Sandra Day O'Connor Courthouse
4  401 W. Washington
   Phoenix, Arizona 85003
5
   CHRISTINA REID-MOORE
6  Assistant U.S. Attorney
   United States Attorney's Office
7  Two Renaissance Square
   40 N. Central Avenue, Suite 1200
8  Phoenix, Arizona 85004-4408
9  Copy mailed to:
10 Valance Ray Smith, Sr.
   Defendant
11
   *s/J. McClellan/ny*
12 J. McClellan/ny

13