WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-13-8043-001-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Valence Ray Smith, Sr., | |
| Defendant. | |

Pending before the Court are Defendant Valance Ray Smith, Sr.'s Motions to Suppress. (Doc. 34 ("First Motion to Suppress"); Doc. 43 ("Second Motion to Suppress.")) For the reasons discussed below, Smith's Motions are denied.

## BACKGROUND

On the morning of September 29, 2012, Maydena Samson arrived at the Peach Springs Emergency Medical Services Office ("EMS") with bodily injuries. (Doc. 34 at 2; Doc. 47 at 2.) Hualapai Nation Police Officer Jaros was dispatched to the EMS at approximately 10:51 a.m. (*Id.*) An Emergency Medical Technician at EMS notified Officer Jaros that Samson was observed to be bleeding from her right elbow. He was advised that Samson had stated that she had been assaulted with a metal pipe by her boyfriend, Valance Smith ("Defendant"). (Doc. 47 at 2.)

Officer Jaros then responded to the residence of Erva Bravo, who Samson's mother reported might have been a witness to the assault. (Doc. 47 at 3.) Bravo told Officer Jaros that Samson had come to her house, bleeding from her right elbow, after allegedly being assaulted by Defendant at his residence nearby. (*Id.*)

1    Officer Jaros then went to Smith's residence and spoke to Smith who Jaros
2  recognized sitting outside. (Doc. 34 at 2; Doc. 47 at 3.) Officer Jaros asked Smith what
3  had happened, and Smith told him that Samson had become angry with him and had
4  ripped off his colostomy bag. (Doc. 34 at 3; Doc. 47 at 3.) Officer Jaros asked Smith if he
5  could come inside the residence and Smith agreed. (*Id.*) Inside, Officer Jaros noticed
6  what appeared to be blood on the on the floor and wall. (Doc. 47 at 3.) Officer Jaros took
7  photographs of the scene inside the residence. (*Id.*) Smith told Officer Jaros that he had
8  been drinking, and Officer Jaros noted in his report that Smith's speech was slurred.
9  (Doc. 34 at 3.)
10   Later that day, shortly after 2:23 p.m., Officer Jaros returned to Smith's residence
11 after he was advised by Hualapai Nation Police Department Criminal Investigator Roger
12 Felker that Samson had reported that Smith had assaulted her with a metal pipe. (Doc. 34
13 at 3; Doc. 47 at 3.) Officer Jaros first took blood samples from outside the residence.
14 (Doc. 47 at 3.) He then proceeded to Smith's front door and asked for permission to come
15 inside the house to take blood samples. (Doc. 34 at 3; Doc. 47 at 4.) Smith agreed and
16 signed a "Consent to Search Waiver" form. (*Id.*) Officer Jaros removed a blood sample
17 from the residence, took further photographs, and seized a metal pipe with what appeared
18 to be blood stains. (*Id.*)
19   That evening, at approximately 7:30 p.m., Officer Nixon, also of the Hualapai
20 Nation Police Department, went to Smith's residence and arrested him. (Doc. 34 at 3;
21 Doc. 47 at 5.) Officer Nixon read Smith his *Miranda* rights. (Doc. 34 at 3.) When Smith
22 was booked on the charges, a portable breath test was performed and Smith's BAC was
23 0.224%. (*Id.*; Doc. 46 at 5.)
24   The next day, on September 30, 2012, Smith was interviewed at the Hualapai
25 Adult Detention Center by Felker and FBI Special Agent Alberto Chavez. (Doc. 43 at 4;
26 Doc. 52 at 2.) Smith was advised of his *Miranda* rights and, at approximately 12:38 p.m.,
27 signed a written waiver of those rights. (Doc. 43 at 5; Doc. 52 at 2.) During the interview,
28 Smith was confronted with physical evidence obtained from the September 29 searches

of his home. (Doc. 43 at 5.) Smith claimed that on the day of the alleged assault, he was under the influence of alcohol, anti-seizure medication, and pain relievers. (Doc. 34 at 3–4; Doc. 47 at 5.) Smith asserted that he had a seizure on "Friday" (believed to be September 28, 2012) and that he had been treated at Kingman Regional Medical Center. (Doc. 34 at 3; Doc. 47 at 5.)

In his First Motion to Suppress (Doc. 34), Smith now moves to suppress the evidence seized by Officer Jaros during the two searches of Smith's home on September 29. This includes the photographs taken by Officer Jaros, the blood samples, and the metal pipe. (*Id.*) He asserts that any consent he gave to search his home was insufficient because of his intoxication, and thus that the warrantless searches of his home were unlawful. (*Id.*) In his Second Motion to Suppress (Doc. 43), Smith moves to suppress his statements made during the September 30 interview. He argues that he did not voluntarily waive his *Miranda* rights, that he did not make a voluntary statement, and that the statements made were the result of the evidence obtained through the allegedly unlawful searches of his home. (*Id.*) The Court held an evidentiary hearing on October 2, 2013.

## ANALYSIS

**1.    Defendant's First Motion to Suppress**

Smith first argues for the suppression of the photographs taken and evidence seized during the two searches of his residence on September 29. (Doc. 34.) The "Fourth Amendment rule ordinarily prohibit[s] the warrantless entry of a person's house as unreasonable *per se,*" but such warrantless searches are lawful "with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Smith does not contest that he possessed this authority.

The Government has the burden of demonstrating that consent was "freely and voluntarily given." *United States v. Koshnevis*, 979 F.2d 691, 694 (9th Cir. 1992) (internal citations omitted).   Whether consent was voluntary is based on the totality of circumstances. *Schneckloth,* 412 U.S. at 248. To determine voluntariness, the Ninth

Circuit looks to five factors: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was told that he had the right to refuse consent; and (5) whether the defendant was told that a search warrant could be obtained. *United States v. Basher*, 629 F.3d 1161, 1168 (9th Cir. 2011). The Court need not find that all five factors support the government in order to determine that consent was voluntary. *Id.*

Here, Smith was not in custody during either of the two challenged searches. Officer Jaros did not have a gun drawn during the search. These factors both support a finding of voluntariness. At the third factor, Smith did not receive *Miranda* warnings before the search, but as Smith was not in custody, *Miranda* warnings were not required. *See Basher*, 629 F.3d at 1168. Next, it does not appear that Officer Jaros told Smith of his right to refuse consent at the first search, during which the initial photographs were taken. Officer Jaros read Smith the "Consent to Search Waiver" form before the second search. The waiver explained a defendant's right to refuse consent and it appears that Smith both indicated that he understood the waiver and signed the form. (Doc. 47 at 8–9.) Thus the fourth factor supports a finding of voluntariness, at least for the second search. Finally, there is no indication that Officer Jaros mentioned the possibility of obtaining a search warrant or made any related threats.

Altogether, the five factors support a finding of voluntariness for both searches of Smith's home. However, Smith argues that despite the factors generally indicating that his consent to search was voluntary, Smith was not able to give such consent because of his level of intoxication during the searches. (Doc. 34 at 5–6.) When a defendant has alleged that he lacked the mental capacity to consent, the Government must prove that "a reasonable officer would have viewed [the defendant's] consent as voluntary." *Koshnevis*, 979 F.2d at 694–95 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990)). While it does appear that Smith was intoxicated during the September 29 searches according to the report from Officer Jaros, the record suggests that Smith had begun to clean up the crime scene before Officer Jaros arrived, that he gave Officer Jaros

his own version of events, was able to answer the Officer's questions, sign the consent form, and otherwise indicate that he understood why Officer Jaros was asking to search his home. In light of these actions and statements, Officer Jaros reasonably concluded that Smith validly consented to the searches. Smith cites no authority to suggest that his intoxication during the searches nonetheless vitiates his consent to search.[1] Accordingly, Smith's motion to suppress the fruits of the September 29 searches is denied.

**2.     Defendant's Second Motion to Suppress**

In his Second Motion to Suppress, Smith argues for the exclusion of his statements made during the September 30 interview at the Hualapai Adult Detention Center on the grounds that he did not make a valid waiver of his *Miranda* rights because he was intoxicated, that his statements to police were not voluntary because he was intoxicated, and that his statements are inadmissible because they were induced by confrontation with the fruits of the September 29 searches of Smith's home.

Smith first asserts that he did not make a valid waiver of his *Miranda* rights because he was intoxicated at the time he provided his waiver. Smith does not contest that he was advised of his *Miranda* rights at the beginning of the September 30 interview. Thus, his statements made during the interview are admissible against him if he waived those rights "voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Smith argues that his waiver was invalid because he remained under the influence of the prescription drugs and alcohol he ingested on September 29. (Doc. 43 at 7.) However, Smith's interview occurred approximately 17 hours after he was taken into

---

[1] *But see United States v. Reynolds*, 646 F.3d 63, 74 (1st Cir. 2011) (finding consent to search valid as there was "no evidence that [the defendant] was affected by any underlying illness during the time of the search," although she had been involuntarily committed to a mental hospital one month prior); *United States v. Willie*, 462 F.3d 892, 895–97 (8th Cir. 2009) (finding consent to search valid because although defendant may have been under the influence of methamphetamine, "the evidence does not suggest that he was so intoxicated that he was not 'competent to understand the nature of his acts'" (internal citation omitted)); *United States v. George*, 987 F.3d 1428, 1430–31 (9th Cir. 1993) (finding consent to search valid although defendant was in a hospital emergency room, three hours after having regained consciousness following a drug overdose).

tribal custody on September 29. Smith was advised of his rights, was able to sign the *Miranda* waiver form, never indicated that he wished for questioning to stop at any point, and appeared responsive and lucid throughout his interview. Thus, the totality of the circumstances demonstrates that Smith's waiver of his *Miranda* rights was valid.[2]

Smith next asserts that even if the requirements of *Miranda* were satisfied, his statements should be excluded because the statements constitute an involuntary confession. Smith concedes that most of the factors for determining whether a statement is voluntary under 18 U.S.C. § 3501(b) indicate admissibility in this case. Smith argues that despite these factors, his statements were still involuntary because he remained under the influence of prescription drugs and alcohol ingested the day before the interview. Smith cites to no authority that suggests that an individual with his level of intoxication is unable to provide a voluntary confession.[3] Again, the totality of the circumstances demonstrates that Smith's statements were voluntarily made.

Finally, Smith argues that any statements made during the interview are inadmissible because they were induced by confrontation with the evidence obtained from the September 29 searches. As previously noted, Smith gave valid consent for the September 29 searches and thus the searches were lawful. Any statements Smith made to police on September 30 cannot be suppressed on the grounds that they were induced by the fruits of those lawful searches. Therefore,

---

[2] While a defendant's intoxication or physical distress is certainly relevant to the inquiry into whether a waiver of *Miranda* rights was valid, courts have found defendants able to provide a valid waiver despite being in such a condition. *See, e.g.*, *United States v. Rodriquez-Rodriquez*, 393 F.3d 849, 855 (9th Cir. 2005) (finding defendant's waiver of *Miranda* rights valid despite evidence that defendant was suffering from mild to moderate heroin withdrawal); *George*, 987 F.3d at 1430–31 (noting that "a defendant can voluntarily waive his *Miranda* rights even when he is in the hospital, on medication, and in pain").

[3] *But see George*, 987 F.3d at 1431 (finding defendant's statements were made voluntarily when defendant was hospitalized and in critical condition following an apparent drug overdose when his statements were made); *United States v. Martin*, 781 F.2d 671, 673–74 (9th Cir. 1985) (finding defendant's statements to have been made voluntarily while defendant was in pain and under the influence of Demerol, a painkiller).

1 **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress (Doc. 34) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress (Doc. 43) is **denied**.

Dated this 7th day of October, 2013.

_/s/ A. Murray Snow_
G. Murray Snow
United States District Judge